CHATMAN, APPELLEE, *v.* CHATMAN, APPELLANT.

(No. 77AP-352—Decided October 20, 1977.)

*Mr. James B. Dobbs,* for appellee.
*Ms. Beatrice K. Sowald,* for appellant.

REILLY, J. This is an appeal from a judgment of the Court of Common Pleas of Franklin County, Division of Domestic Relations.

The transcript indicates that appellant gave birth to a child December 4, 1969. Subsequently, she met and married appellee. At that time, appellant knew the child's biological father. Prior to the marriage, appellee indicated that he wanted to be responsible for the child. Whereupon, appellant informed the natural father that appellee would assume the father's responsibilities.

The parties were married July 29, 1972. Appellee then went to the Department of Vital Statistics and signed a declaration of paternity under oath, stating that he was the child's father. The birth certificate, issued August 8, 1972, shows appellee as the father. Before going to Korea with the Army, appellee signed for both appellant and the child as dependents. While he was in the service, including when he was overseas, there was an allotment for appellant

and the child from the United States government. When appellee returned from Korea, he was stationed in Loring, Maine, and appellant, as well as the child, moved there and they lived together for three months. They returned to Columbus and lived together for approximately three months after his discharge.

The parties were separated in February 1975. The court found that appellant was entitled to a divorce on her cross-complaint, on the ground that the parties had been separated for a continuous two-year period. The court also found that appellee was not responsible for the support and maintenance of the child. The court held that the legal status of the child was not changed by the actions of appellee, and that he was not entitled to any rights of custody or visitation with the child. Whereupon, this appeal was duly filed, including the following assignment of error:

"The trial court erred in holding that the status [of] the child was not changed by the actions and conduct of the plaintiff-appellee in filing a declaration of paternity and changing the child's birth certificate and in finding that plaintiff-appellee is not responsible for support and maintenance of the minor child."

It is undisputed that appellee is not the biological father of the child, and that the parties were married after the child was born. In addition, there was never any adoption proceeding filed or processed. The only situation in Ohio in which there is a presumption of parenthood is where the man marries a woman who is pregnant, knowing she is pregnant by another man, and then, subsequent to the marriage, the child is born during wedlock. (*Burse* v. *Burse* [1976], 48 Ohio App. 2d 244.) At any rate, the court will negate the presumption if it appears that the woman fraudulently induced the marriage, even though the child is born after the marriage.

The record in this case shows that the parties were not married for over two years after the birth of the child. Appellant may have brought a paternity action for support against the true biological father, or appellee could have become obligated to support a child not his own by birth

or presumption, by proceeding through adoption. Adoption plainly is a statutory procedure, involving very definite statutory or legal requirements. There simply is not any acceptable way to short circuit such adoption requirements. In essence, appellee's application to change the child's last name to his own upon her birth certificate was void. R. C. 2105.18 provides the following:

"When a man has children by a woman and afterward intermarries with her, such issue, if acknowledged by him as his children, will be legitimate. The issue of parents whose marriage is null in law shall nevertheless be legitimate.

"The natural father of a child by a woman unmarried at the time of the birth of such child, may file an application in the probate court of the county wherein he resides or in the county in which such child resides acknowledging that such child is his, and upon consent of the mother, or if she be deceased or incompetent, or has surrendered custody, upon the consent of the person or agency having custody of such child, or if a court having jurisdiction over the custody thereof, the probate court, if satisfied that the applicant is the natural father and that establishment of such relationship is for the best interest of such child, shall enter the finding of such fact upon its journal and thereafter such child shall be the child of the applicant as though born to him in lawful wedlock."

This statute is a method of allowing the true parents of the child, who marry, to make a child legitimate. Also, the statute provides for legitimization procedure by the natural father. It does not, however, provide for de facto adoption. The adoption procedure is designed to protect all parties concerned, including the adoptive child. There are provisions for next friend investigation, court examinations and determinations involving the best interests of the child, particularly concerning the nature and status of the adoptive parent or parents.

Accordingly, for the foregoing reasons, appellant's assignment of error is not well taken and is overruled. This does not preclude, however, a contract or estoppel action

by appellant in another forum. The judgment of the trial court must be affirmed.

*Judgment affirmed.*

HOLMES and MCCORMAC, JJ., concur.